Mr. Justice Hagner
delivered the opinion of the Court.
This case has been argued with great earnestness, all the more commendable because it is understood the appearance of counsel for the traverser was merely a charitable act upon their part. We have examined from beginning to end, in the most painstaking way, not only those points which were properly before us upon this appeal, but all others presented in the argument, although many of them are matters, strictly speaking, we were not called upon to consider. We are not sitting here dispensing private justice with power to reverse a criminal conviction from feelings of pity. The public justice of the United States with which we are concerned, is to be administered according to fixed legal rules, which the courts are not at liberty 'to disregard or change at their will.
In September, 1887, Mary McBride and John W. McFarland were indicted for a violation of Section 1151 of the Revised Statutes of the District of Columbia. That part of the section involved here, punishes an individual who shall set on fire or burn, or attempt to set on fire or burn, any house or out-house in the District, with the intent to injure or defraud any other person or body politic or corporate. In the Criminal Court, at that term, objections were filed to the indictment, which were heard and overruled, and the parties then pleaded not guilty and the case was postponed to the designated day in October. On that day the trial began, proceeded for five days, when one of the jurors died, and the case was then continued until the next term. *377 In June, 1888, it was again called for hearing, two years after the alleged firing. The result of that trial was that McFarland was found guilty and was sent to the penitentiary.
McBride also was found guilty and sentenced, but she moved for a new trial, and that motion is here upon exceptions.
The first objections urged at the argument relate to alleged irregularities in the impaneling of the jury. The circumstances out of which they arose are thus set forth in the bill of exceptions:
“The June, 1888, term of this court opened on Monday, June 18, 1888, at 10 o’clock, a. m.
“This cause.was called. Both defendants were present. The counsel for defendant McBride, Van H. Manning, Esq., stated that his client had no attorney to attend to the details of the case and to assist him at the trial, and asked for postponement, which the court denied.
“The court then assigned Howard C. Clagett as such attorney to assist Mr. Manning.'
“Mr. Manning then asked that the case stand over until next morning because Mr. Clagett could not be in court until that time, which request was denied by the court and F. P. Closs, Esq., was requested by the court to assist or look after the impaneling of the jury in behalf of defendant McBride, which service Mr. Closs then and there accepted.
“ The list of petit jurors who -had been drawn for the term was then called, and twenty-three responded and the impaneling of a jury for the trial of the cause proceeded. Twelve of the jurors so drawn were called to the box. The prosecution and each defendant challenged several, so that early in the day the list (the twenty-three so responding), was exhausted and an extra list of thirty was ordered drawn and summoned.
“The thirty names were drawn and the officers proceeded to summon them to appear forthwith.
*378 “Nine were summoned and appeared one at a time.
“As each juror, so summoned appeared the impaneling proceeded until the list of nine so responding was exhausted, upon which the court ordered a talesman to be summoned. Such talesman was so summoned, accepted by both parties, and the panel being then completed, the jury were sworn.
“All the preceding proceedings were had without objecttion.
“ Immediately upon the jury being so sworn the court adjourned until next-morning.
“ When the jury was so sworn it was composed of eight of the original twenty-three, three of the nine, and the one talesman.
“ When the court opened on Tuesday morning Mr. Clag,ett and Mr. Manning appeared to represent defendant McBride, at-which time Mr. Clagett remarked that he ‘desired to except to the manner of impaneling the jury, there not having been a full panel present when such impaneling began’ to which remark the court replied, in substance, that there seemed to be nothing for the consideration of the court, and the trial would proceed.”
The record contains no further reference to the notice-given by Mr. Clagett of his desire to except, and it is insisted by the District Attorney that it was not acted on, and the purpose to except was abandoned. We have, nevertheless, examined it, and entertain no doubt the ruling of the court below was correct.
The objection belongs to the class that should be availed of by a challenge to the array. Bishop, Vol. I, Sec. 876, says that a challenge is either to- the array or to the polls. “The former is taken when there is some objection affecting the legal constitution of the entire panel; the latter when there is some individual disqualification attaching to the particular juror. The regular time and manner of objecting to a juror, or to the collective body, is by challenge while the trial panel is being made up. It should be done before the *379 jury is sworn.” 1 Bish. Crim. Proc., Sec. 932 a. That such an objection may be waived by a defendant, if the cause is known to him at the time the objection should properly be presented, is well settled. That the irregularity relied on was known to the counsel from the commencement of the trial is undoubted, for the record expressly states that every step took place in the presence of all the. parties, and that all the proceedings “ were had without objection.” The completion of the jury was effected by the swearing of one talesman, who “ was accepted by both parties.”
In 1 Bishop’s Grim. Proc., Secs. 117-119, the familiar principle governing this subject is thus discussed, Sec. 118: “ If the defendant has consented to any step in the proceedings ; or if it has been taken at his request, or he did not object to it at the proper time, when he might, he cannot afterward complain of it, however contrary it was to his constitutional, statutory or common law rights. In judicial proceedings this doctrine of waiver is a necessity, for without it they would rarely be carried on with success.”
The qualification of the general doctrine, as stated by the author, does not extricate this case from these sensible general rules. In Section 932 it is said, “A defendant, if he chooses may waive objections to the selecting of the jury, or to individual jurors, and agree to be tried by such as are put upon him; and if, while the panel is being made up and sworn for his trial, he knows of a cause of challenge and does not take it, he cannot avail himself of the defect after-wards.”
In People vs. Scott, 56 Michigan, 154, the defendant after conviction of a felony, moved for a new trial upon the ground that one of the jurors was an unnaturalized foreigner. Cooley, C. J., speaking for the court in overruling the motion, said there was no showing that the fact had come to the knowledge of the defendant subsequent to the impaneling of the jury, and no reason given for not taking the objection to the juror by way of challenge before he was sworn — that the *380 trial court is the proper and suitable tribunal for determining the qualification of jurors, upon challenges on which the court must judicially pass — that whether made or not, the court in finally accepting and impaneling the jury, judicially determines that the several members are competent; that the party has then had all his rights as to that matter preserved to him, and any allegation that any one of the jurors is incompetent, except as it may be based on exception taken to the overruling of a challenge, is an allegation against an adjudged fact. In Reynolds vs. United States, 98 U. S., 158, the Supreme Court held that a prisoner will be held to have waived his constitutional right to be confronted with the witnesses against him if, in his presence, it is alleged they have been kept away by his procurement, and he makes no effort to deny the charge.
We have no intention of deciding that the objection to the competency of the jury was well taken; but it is sufficient to say that all grounds of objection upon that ground were effectually waived by the defendant at the trial, and we are not at liberty to re-examine them here.
Immediately after the opening statements had been made by the counsel for the prosecution and for McBride, respectively, and before any testimony was offered, Mr. Clagett asked the court to direct the prosecution to elect on which count they would proceed and ask a conviction, which request was denied by the court, and to such denial counsel for McBride excepted.
There can be no doubt the determination of that motion is a matter in the discretion of the trial court. 1 Bishop’s Crim. Proc., Sec. 425. Its refusal to compel an election is, therefore, not reviewable here. The next point is thus stated:
“During the trial, counsel for defendant McBride objected to any proof under the third and fourth counts of the indictment, because there was no averment in the indictment of any interest in the insurance company in the building *381 mentioned in the indictment, and claimed to have been burned, and on the further ground-that there was no averment as to the existence of any insurance of any personal property, goods or chattels contained in the house, and no sufficient grounds otherwise to authorize any proof whatever to sustain the averment that the burning was to defraud the insurance company. But the presiding justice overruled the said objection, and allowed proof to be offered of an insurance by the company named in the indictment of personal property, goods and chattels in the house burned, to which ruling the defendant McBride excepted.” The indictment sets forth, in the third count (upon which there was a verdict of guilty), that the defendant, “with the intent to injure and defraud a certain corporation, known as and called ‘ The President and Directors of the Firemen’s Insurance Company of Washington and Georgetown,’ did set on fire with intent .to burn, and did burn a certain house (describing it), against the form of the statute,” &c.
We have examined the indictments based upon statutes like this, and find they are precisely the same in the particular complained of as that before us.
In Bishop’s Directions and Forms, section 184, an indictment is given, based upon the 43d Geo. Ill, Ch. 58, section 1, by which it was made a felony to set fire to any house “with intent thereby to injure or defraud his majesty or any subject,-‘or anybody corporate.’” This form contains no allegation of the existence of a policy of insurance by the company named, or of any interest on its part in the building burned, but simply avers it was set on fire “with intent thereby to injure and defraud the London Insurance Company, against the peace,” &c.
So in section 185 it is sai(l that “ an indictment under a Connecticut statute, making it felony in every owner or tenant of any building who shall willfully burn it, or anything therein, with intent to defraud another, wdll be good, which alleged the burning, ‘ with intent thereby to defraud *382 the Republic Fire Insurance Company against ’ &c,” without any averment of an insurance by the company. •
Upon these authorities and the general principles of criminal pleading, we think the form of indictment 'used in this case is sufficient in the particular complained of.
Four other objections to the indictment have been urged-before us. Before the trial began objections to the indictment had already been made by special pleas, which had been overruled after argument, and the defendants were placed on trial. Can these objections be properly renewed during the trial, after they had been already decided before it began?
In United States vs. Gooding, 12 Wheaton, 460, this question was presented, though in a somewhat different form. There no demurrer or plea had been interposed; but after testimony had been introduced the defendant’s counsel asked the trial court to declare that certain counts in the indictment were insufficient; and the judges being divided in opinion, the propriety of the request was certified to the Supreme Court. Mr. Justice Story, speaking for that Gourt, said: “It.only remains to consider the point whether these objections to the sufficiency of the indictment could be properly taken at this stage of the proceedings. Undoubtedly, according to the regular course of practice, objections to the form and sufficiency of an indictment ought to be discussed upon a motion to quash the indictment, which may be granted or refused in the discretion of the court, or upon demurrer to the indictment, or upon a motion in arrest of judgment, which are matters of right. The defendant has no right to insist that such objection should be discussed or decided during the trial of the facts by the jury. It would be very inconvenient and embarrassing to allow a discussion of such topics during the progress of the cause before the jury, and introduce much confusion into the administration of public justice.
“But we think it is not wholly incompetent for the court to *383 eutertain such questions during the trial, in the exercise of a sound discretion. It should, however, be rarely done, and only under circumstances of an extraordinary nature. The Circuit Court in the present case did allow the introduction and discussion of these questions during the trial, and were divided upon the propriety of the practice. We can only certify that the court possessed the authority, but that it ought not to be exercised except on very urgent occasions.”
Nothing appears in the present case to show that the court did not overrule the objections because they were interposed after the testimony had closed, or because they had already been decided after full hearing, and that decision stood as the law of the case. But we have examined all the objections that have been made to the indictment at the hearing, although several of them do not appear in any way in the record itself. One of them is that the insurance company is not properly described in the indictment. It is stated in the third and fourth counts that the setting on fire and burning was committed to injure and defraud a certain corporation, known as and called the “ President and Directors of the Firemen’s Insurance Company- of Washington and Georgetown.” The objection is here made that this is not a sufficient description of the company; that it should be stated that it was incorporated under a certain act of Congress, and that the indictment should set forth the names of the different persons constituting the officers of the company. The authorities already alluded to show the form used here must be held sufficient until evidence has been adduced to show its incorrectness, and nothing of the kind appears in the record.
Then it is contended the third and fourth counts are defective, because they do not state the ownership of the property set on fire. The third count states “'that Mary J. McBride and the said John W. McFarland, maliciously and willfully, and with intent to injure and defraud a certain corporation “ called,” &'c., “ did set on fire with intent to *384 burn and did burn a certain house, situate in the city of Washington, in said District, commonly known as and called house No. 515 Eleventh street northwest, against the form of the statute,” &c. '
The fourth count is in the same form as the third, except that it also says, “ which said house was then and there in the possession of the said Mary J. McBride.”
This averment, it is insisted, is insufficient because it does not state that the house belonged to another person and not to the defendant; since it is not arson for a person to set fire to his own house, and hence such a negation is requisite to show that the defendants had committed a crime. There can be no doubt that at common law arson consisted only in the burning of the dwelling house of another. But this indictment is not founded on the common law of arson at all, but upon Section 1151 of the Revised Statutes of this District. This section is composed of two statutes passed by Congress, and specially applicable to this District. The first was the Act of 1831, Sec. 3, Ch. 37, 4 Stats., 448, which is reproduced in Section 1157, except as modified by the Act of 1852, Ch. 55.
Section 3 of the Aet of 1831 was as follows: “Every person duly convicted of the crime of maliciously, willfully, or fraudulently burning any dwelling house or any other house barn, or stable adjoining thereto, or any store, barn, or outhouse, having goods, tobacco, hay, or grain therein, although the same shall not be adjoining to any dwelling house, or of maliciously and willfully burning any of the public buildings in the cities, towns or counties of the District of Columbia, belonging to the United States, or the said cities, towns or counties, or any church, meeting house, or other building for» public worship, belonging to any voluntary society or body corporate,” &c., .“shall be sentenced,” &c.
This was a departure from the common law definition of arson, and punished the burning of buildings not dwellings *385 or parcels thereof, and omitted the ingredient of the common law offense, which required that the buildings burned should be the property of another. Then came the Act of 1852, Ch. 581, 10 Stats., 13, the preamble of which recited that whereas it had been represented that so much of the Act of 1831 as provided a punishment for the burning of stores, barns or out-houses, not adjoining a dwelling house, has been construed to apply to the burning of such houses only when they contained merchandise, tobacco, goods, &c., whereby offenders have escaped punishment for burning buildings in which none of such articles are kept. It was then enacted that thereafter i'f any person shall maliciously, willfully, or fraudulently, and wdth intent to injure or defraud any other person or persons or body politic or corporate, burn or set on fire with intent to burn, or attempt to set on fire or burn, any house or out-house in the District of Columbia, whether the same be finished or in process of erection, though the said house or out-house shall not, at the time of such setting on fire or attempting to set on fire or burn, have any goods, tobacco, hay, and so forth, therein, nor be adjoining to any dwelling house, or be occupied for any purpose whatever,” should be punished, &c.
This latter act now merged in Section 1152, It. S. D. C., not only corrected the defect pointed out in the preamble, but it also punished, for the first time, the attempt to set on fire or burn, neither of which constitute arson at the common law, and this statute also omitted the common law requirement that the house should belong to another person than the accused.
Section 1152, as it now stands, differs in all the essential particulars we have pointed out from the common law offense; and it is evident it describes a series of new offenses, specially created by the Legislature, quite independent of and uncontrolled by the discriminations and requirements necessary in the common law indictment for arson; and among other averments which no longer were necessary *386 or proper in an indictment under this section was that of the ownership being in another. The language of the new law was broad enough to punish one for setting fire to his own house, as well as the house of another. Of course, in the formef case it would no longer be necessary to aver in the indictment the ownership of the property, except as such description might be needful to its identification, to defeat a second prosecution after a verdict of acquittal or conviction. The other reason, that the absence of the averment would have left the charge of the offense faulty and incomplete, ceased to have application to the description of the new crime created by the statute.
The third and fourth counts of this indictment, each described the premises as “ commonly known and called house number 515 11th street, northwest;” a description incapable of being misunderstood or confounded with any other property in the city and District.
The fourth count added the further circumstance of location, “ which said house was then and there in the possession of the said Mary J. McBride.” It is impossible to suppose that a second prosecution for the offense of setting fire to this same house on the 30th of June, 1886, by either of these defendants, would be allowed by any court to proceed upon the presentation of the present record. Upon principle, -we think the description should be held to be sufficient, and that, too, should be the ruling upon the authorities.
A statute of New York declared that arson in the first degree should 'consist of any willful setting fire to or burning in the night-time of a dwelling house in which there shall be at the time some human being, and that every house, prison, jail or other edifice, which had been so occupied by persons lodging therein at night should be deemed a dwelling house of any person so lodging therein. The statute was under consideration in Shepherd vs. Pepper, 19 N. Y., 538. The defendant Shepherd owned a house, the *387 lower part of which Geyer occupied as a shop and bedroom, and he was sleeping in the room when the fire occurred. Shepherd, the owner of the house, was indicted for setting fire to the dwelling house which was described as the house of Geyer. Judge Denio, delivering the opinion of the court, at great length, held that the legislature, in adopting this provision of the Revised Code, intended to create a new offense differing from arson at common law, and therefore omitted all reference to the question of ownership, and introduced features not appropriate to the description of the common law offense, namely, that the burning should be at night and that some living person should be in the building at the time; that the statute contained an enumeration of all the necessary constituents of the new offense, and it sustained the indictment and held that the burning of his own house, by the owner, was within the terms and intent of the statute. On thé samé reasoning the purpose of Congress to create a new offense by the Acts of 1831 and 1852 is equally clear. The new offense was the setting on fire, or attempting to set fire to any dwelling or other building, whether adjoining or not, and whether containing goods, grain, &c., or empty, or with intent to injure or defraud any person or body corporate. “Any ” dwelling is certainly comprehensive enough to include the house occupied by or in the possession of a tenant.
To the same effect was the case of the People vs. Shainwald, 51 California, 568. There the indictment charged that the building set on- fire by the defendant belonged to Pierce and others, being the same building that in August and September, 1875, had been occupied by Van Arsdale & Company as a store. At the trial there was no proof at all that Pierce and others owned the building; but there was evidence that at the time alleged Van Arsdale & Company did occupy it, but that the defendant had been appointed receiver, and as such, for some time before the burning, had possession of the store and goods. The *388 defendant was convicted and brought up the case on exceptions. On appeal the court held it was not necesssary to prove the ownership, as the prosecution had proved that the house had been used and occupied as alleged ; that whether it was the property of Pierce and others, as alleged, was immaterial, as their ownership, if proven as alleged in the indictment, would only further identify the house, which had already been otherwise sufficiently identified.
This was a decision that the offense' there charged, “ burning a store,” not being arson at common law, the statutory offense would be sufficiently described without the common law strictness of averment and proof as to the ownership.
So in Erskine vs. Com., 8 Grat., 624, the indictment charged that Erskine maliciously set fire to and burnt a building on his own farm in Ohio County, Va., “ which then and there was in the occupation and possession of Eli Prettyman.” Section 7 of the Act of 1847, under which the indictment was found, punished any free person who should maliciously burn any building whatsoever. The previous sections had punished the burning of dwellings, &c., and the only departure from the common law in the seventh section appeared to be that the building therein referred to need not be a dwelling or adjacent thereto. But the court of appeals held the description sufficient, and that a party might be punished under Section -7 for burning his own house, then in the legal occupancy of another.
To this objection, as to several others insisted on at the hearing, a satisfactory reply would be made by reference to Section 1025 of the Devised Statutes of the United States. “No indictment found and presented by a grand jury in any district or circuit, or other court of the United States, shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon, be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant.”
*389 The counsel for McBride then asked the court to give sundry instructions, which are incorporated in the bill of exceptions under the head of Exhibits A and B. . Exhibit A contains three “chapters” of proposed instructions; each “chapter” presents a variety of propositions, twenty in number. Exhibit B, with not so many chapters; also contains twenty prayers. The court granted the fourth, fifth, eighth and ninth prayers of Chapter 3, Exhibit A, and nineteen and twenty of Chapter B, and refused the others, to which rulings exceptions were taken. The court then gave its own cha,rge, set forth as Exhibit C, and in addition gave some additional instructions as to the presumption of innocence. We have examined all these propsitions with great care. Chapter 1 of Exhibit A, is founded on a misconception .of the statute. The defendant’s counsel insist that the charge of an attempt to burn a house with intent to injure or defraud is not properly within the meaning of the statute, because it is not alleged in the indictment that this house was a dwelling, or that it did not contain any goods, tobacco, hay, or grain, since Congress-only meant to punish an attempt to burn a dwelling house or a building which at the time contained any grain, oats, tobacco, hay, and so forth. This contention is so utterly at variance with a proper reading of the statute, that it is not necessary to consume more time in its consideration than to say it is entirely unfounded. As all the other prayers in Exhibit A refer to the first and second counts of the indictment, upon which the defendants were acquitted, the defendants could not have been injured by the ruling, and they cannot, therefore, be considered on appeal.
The second “ chapter ” of Exhibit A contains a number of propositions it would have been highly improper for the court to grant to the jury, because manifestly ■ tending to mislead them without benefit to the accused. Some contain principles plainly erroneous, and the correctness of others is more than doubtful; but they were correctly disposed *390 of by the judge in his charge; and therefore cannot be availed of here. It would be very easy to expose their error, but it would not be worth the effort.
In chapter 3, the prayers presented relate to the question of proof. I will refer for an illustration to the first. “ The charge contained in the indictment in both counts consists, first, of the averment of burning or setting fire” to the house in question; “of doing this with the purpose of injuring or defrauding” the president and directors of the Firemen's Insurance Company of Washington and Georgetown. These averements are essential and cannot be dispensed with; nor can their truth be presumed nor conjectured, but being made by the United States must be prpved by it. . The defendants are not charged in the indictment with conspiring to burn, but with the act of burning, and testimony tending to prove a conspiracy is not sufficient to convict upon this charge.”
There is nothing in the record to show one word of testimony on the subject of conspiracy. In fact, the record contains no statement of the evidence in the case at all. The justice states that the Government gave evidence fairly tending to establish the case as alleged in the indictment, and that the defendant also gave evidence fairly tending to prove that they were innocent of the charge preferred. Beyond this statement we cannot rely for information as to what proof was offered upon oral declarations of counsel.
In Reed vs. Gardner, 17 Wallace, 411, the court say: “It has been frequently held by this court that in passing upon the questions presented in a bill of exceptions it will not look beyond the bill itself. It is impossible, upon a record such as this is, that we should know whether the charge is correct or erroneous, or whether the refusals to charge as requested were justified, or whether they were improper.”
In 104 U. S., 555, the court declined to pass upon the charge below where the bill of exceptions does not set forth the evidence.
*391 We think one in the defendant’s series of forty prayers, not noticed by the court, should have been granted; as follows: “The credibility of witnesses must be determined by the jury, but in doing this it will be proper for the jury to consider their manner of testifying, their relations to the parties, if any, the nature and consistency of their statements, as well as their opportunities for observation and capacity to notice and remember the facts stated by them.”
But although this was correct, it was one offered as a series, which contained many propositions plainly “ exceptionable ” and therefore the entire series was properly refused by.the court (Indianapolis vs. Horst, 3' Otto, 295); and the omission to segregate the prayer from its faulty surroundings, cannot justify us in disturbing the verdict below. Besides, substantially the same idea was presented by the justice in his charge.
We have gone through this record in a painstaking way, that the defendant may realize that every possible objection presented by her counsel has been carefully considered.
Upon this examination, finding no error in the ruling below, we overrule the motion for a new trial.